[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
The plaintiffs, Jessica L. Warner and Jason A. Warner, have brought this multi-count complaint against their aunt, the defendant, Marilyn P. Schwarzmann, seeking damages for the misuse of funds entrusted to her, as trustee, by their mother, Patricia P. Warner, in a trust agreement dated February 20, 1980. The trust funds were to be used for the proper support and education of the plaintiffs until the youngest reached the age of twenty-one years old, at which time the principal was to be distributed to the children. Over the years, the trust received certain sums of money including an insurance check of $18,183.45, a retirement fund check of $10,638.55 and the proceeds of a certain parcel of land totaling $67,000. CT Page 807
There is no dispute that despite the provisions of the trust to the contrary, the defendant never gave an accounting of the trust funds until a request was made by the plaintiffs' attorney in 1997. On November 9, 1998, the court, Gaffney, J., found that there was no material fact extant as to the defendant's status and liability and granted summary judgment on the fifth count (action for accounting) of the plaintiffs' complaint. The plaintiffs filed a motion for an appointment of an auditor pursuant to General Statutes § 52-402[1] and on February 17, 1999, the court, Gaffney, J., ordered, that a Lawrence Marziale of Kostin, Rufkess Company, LLC perform the accounting. On August 22, 2000, the auditor provided a report to the court and the plaintiff moved for judgment in accordance with the report. The court, Graham, J., remanded the matter for the taking of additional testimony. On October 30, 2001, the auditor filed a new report and the plaintiff again moved for judgment in accordance with the new findings. After briefs were filed by the parties, this court heard argument on December 12, 2001.
 II
After their mother's death, the plaintiffs lived with their father until 1986 when Jason moved in with his aunt Carolyn Driscoll, her husband and their three children, and they all moved into a house gifted to them by his grandmother. His sister moved into the house four years later.
The defendant kept no documentation or records as trustee. The parties agree that there is a paucity of records in this matter. The auditor was able to review tax returns as the trust filed a yearly income tax return but unfortunately there was little else. The parties indicated in court that the auditor was advised by the defendant that she would give Carolyn Driscoll money when her sister indicated that she was short of funds. As a result of the lack of actual documentation, the auditor utilized a University of Minnesota Extension Service study to compute the cost of raising the children. Neither party has objected to this process, and in fact, both apparently agreed to its use by the auditor. The only issues now concern the auditor's findings in connection with the children's housing and educational costs. While the Minnesota study allowed certain costs for housing and education; in this case adjusted to $4920 each per year, this sum was excluded from the auditor's findings. In connection with the education cost, he found that as both children attended public schools, there was no need to add an educational component. Second, he disallowed any housing costs as he found that any additional cost resulting from the children would have been minimal. He noted that the Driscoll family would have incurred the same material annual costs such as taxes, debt service, repairs and maintenance and insurance," with or without the plaintiffs. The auditor made certain allowances for food, CT Page 808 transportation, clothing, healthcare and allowed a yearly miscellaneous cost of $1470.
The auditor concluded that as of November 2001, the trust should have had a balance remaining of $30,000; in fact, the trust was depleted in 1995. (See appendix A attached herewith).
The parties were able to make their presentations to the auditor and it was his duty to decide issues of credibility and make a determination for the appropriate costs for raising the plaintiffs. While the defendant now objects to the auditor's conclusions to disallow both the education and housing component, it does not appear that she introduced any evidence to support her claim that she incurred actual costs for education or housing that would warrant a different finding. In Berkowitz v. Berkowitz,150 Conn. 637, 645, 192 A.2d 879 (1963), the court held that "[i]t was the function of the court, in acting on the report and supplemental report, to determine whether the committee had materially erred in his rulings or whether by reason of material corrections in his findings the basis of the report was subverted or whether other sufficient reason existed why the report should not be accepted and, if no such reason for rejecting or recommitting the report existed, to render such judgment as the law required upon the facts in the report. Practice Book § 176. The committee's evident rulings which are assigned as error merely limited the inquiry at the second hearing to the issues on which the court recommitted the report. The rulings were correct. The record is devoid of any indication that the committee misapplied the rules governing the burden of proof. There is nothing in the record to indicate that such of the thirty propositions of textbook law made before the committee as were applicable were not properly applied. The real issue before the committee was one of credibility. That was an issue for the committee to determine." Id., 645. See also, Parker v. Avery, Kirby 353-354 (1787).
This principle applies in this case as well. While not having any records of her disbursements, the defendant was certainly not precluded from introducing any testimony through her sister on actual costs, if any, made for the children. She did not. The auditor, did, in fact, analyze the housing costs, and found that the plaintiffs would have had no effect on the major costs, and that any additional costs would have been nominal. The same applies to the educational component; the children received free public education and if any additional expense had been incurred, the defendant surely could have presented evidence. This court finds no reason to not accept the auditor's report.
 III
CT Page 809
For the foregoing reasons, judgment enters for the plaintiffs in accordance with the auditor's report and therefore judgment enters in favor of the plaintiffs in the sum of $30,000.
 ___________________ Berger, J.